United States District Court
Southern District of Texas

**ENTERED**

February 08, 2016

David J. Bradley, Clerk

United States District Court
Southern District of Texas
FILED

FEB 0 5 2016

Clerk of Court

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | | |
|---|---|---|
| SARA GUERRA | § | |
| Plaintiff | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. M-15-038 |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |
| Defendant | § | |

## REPORT & RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) on January 26, 2015. (Dkt. Entry No. 1.) The case was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b). Pending before the Court are the parties' motions for summary judgment, with briefs in support. (Dkt. Entry Nos. 6–8.) Both parties filed responsive briefs as well. (Dkt. Entry No. 9–10.) This case is ripe for disposition on the record.

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 6) be **DENIED**, Defendant's Motion for Summary Judgment (Dkt. Entry No. 8) be **GRANTED**, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

## I. BACKGROUND

Plaintiff filed for disability insurance and supplemental security income benefits in August 2012. (R. 43.) Plaintiff's application was denied initially and upon reconsideration. (Dkt. Entry No.

1

7 at 1.)[1] An administrative Law Judge ("ALJ") issued an unfavorable opinion denying benefits in November 2013, and the Appeals Council denied Plaintiff's request for review. (*Id.*)

At the time of the hearing, Plaintiff was a "younger individual" (born 1968) with a high school education, and her work history included employment as a medical assistant, machine operator, and production worker. (*Id.*) Plaintiff's alleged impairments included the following: lupus erythematosus (SLE), rheumatoid arthritis, depression, and posttraumatic stress disorder (PTSD), obesity, hyperlipidemia, hypothyroidism, and tension headaches. (*See id.* at 1–2; *see also* R. 45–46.)

## II. STANDARD OF REVIEW

So long as the courts provide each party the opportunity to present his contentions in support of his claim and enter judgment only on the basis of the pleadings and transcript of the record, summary judgment is an acceptable device in cases seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) of the Act. *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985); *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981). However, this Court's review of the Commissioner's final decision to deny benefits under the Act, per 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence; and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Under the second permissible inquiry, substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It is more than a scintilla, but less than a preponderance. *Id.* If

---

[1] Docket entry page numbers refer to the electronically-assigned PDF page number via CM-ECF upon opening the entire file. Page numbers from the administrative record refers to the Bates-stamped page number.

the findings of the Commissioner are supported by substantial evidence in the record as a whole, the findings are conclusive and must be affirmed. *Brown*, 192 F.3d at 496. Under this standard of review, this Court must carefully scrutinize the record to determine if such evidence is present. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (per curiam). However, evidentiary conflicts are for the Commissioner, not the courts, to resolve, and courts "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our own judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Brown*, 192 F.3d at 496 (alteration in original) (quoting *Johnson*, 864 F.2d at 343). This Court's judicial review is deferential to the Commissioner's decision, but without being so obsequious that it renders the review meaningless. *Id.*

Although the reviewing court does not reweigh the evidence or try the issues de novo, the court *does* analyze the evidence in determining whether substantial evidence exists, *e.g.*, *Leggett*, 67 F.3d at 564 (explaining that substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion), and, where relevant, in determining whether errors are harmful or prejudicial, *see, e.g., Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) ("[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (explaining that, where an ALJ fails to fairly develop the record and facts, the claimant must show prejudice to justify a remand, which requires a showing the ALJ could and would have adduced evidence that might have altered the result, had the ALJ developed the record fairly and fully).

### III. ESTABLISHING DISABILITY

A plaintiff is not entitled to benefits under Titles II and XVI unless he is "disabled" as defined by the Act. 42 U.S.C. § 423 (d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459–61 (1983). The law and regulations governing benefits under both Titles are the same. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A sequential five-step approach is used to determine whether the claimant qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving the first four steps to show that: (1) he is not presently engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment is either listed or equivalent to an impairment listed in the appendix to the regulations; and, (4) if the impairment is not equivalent to one listed in the regulations, the impairment still prevents him from performing past relevant work. *Leggett*, 67 F.3d at 564 n.2. Once the claimant proves the first four steps, the burden shifts to the Commissioner to establish that the claimant can perform substantial gainful employment available in the national economy. *Greenspan*, 38 F.3d at 236–37. The burden then shifts back to the claimant to rebut this finding. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). A determination at any step that the claimant is or is not disabled within the meaning of the Act ends the inquiry. *Leggett*, 67 F.3d at 564.

In this case, the ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset (R. 45); (2) Plaintiff's lupus erythematosus (SLE), rheumatoid arthritis, depression, and PTSD are severe impairments, but the obesity, hyperlipidemia,

hypothyroidism, and tension headaches are not severe (R. 45–46);  (3) however, the medically determinable severe impairments do not meet or medically equal one of the impairments listed in the appendix to the regulations (R. 46);  (4) she retains the residual functional capacity ("RFC") to perform light work, except that she is limited to understanding, remembering, and carrying out simple instructions and limited to a simple routine and repetitive tasks;  she can concentrate and be attentive for extended periods of time, interact with co-workers and supervisors, and respond appropriately to changes in a routine work setting (R. 49); and, relying on the testimony of a vocational expert, Plaintiff is capable of performing her past relevant work as a machine operator (light unskilled) and production worker (light unskilled) (R. 55).  The ALJ then found that Plaintiff had not been under a disability from April 27, 2012, through the date of the decision.  (R. 55.)

## IV.  APPLICABLE LAW & ANALYSIS

The undersigned does not summarize the entirety of the administrative proceedings and record.  Rather, the undersigned addresses only the issues and evidence disputed by the parties.

### A.    Whether the ALJ Properly Evaluated the Opinion Evidence

Plaintiff argues that the ALJ's analysis of the opinion evidence from her treating sources does not comport with the requirements of 20 C.F.R. § 404.1527 and Fifth Circuit precedent.  (Dkt. Entry No. 7 at 3; 4–7.)  The opinion evidence includes opinions from the following physicians who have treated or examined Plaintiff: Dr. Garcia, a treating rheumatologist; Dr. Pean, a treating primary care physician; and the SSA examining psychologist.  (*Id.* at 5–7.)  Plaintiff argues that the ALJ failed to provide "good cause" for rejecting the opinions of Plaintiff's physicians.  (*Id.* at 7–13.) Plaintiff also explains how the opinion evidence is in fact consistent with or not contradicted by the underlying medical evidence regarding Plaintiff's physical and mental impairments.  (*Id.* at 14–19.)

5

Defendant argues in response that the ALJ did not commit reversible error in evaluating the opinion evidence, and the ALJ properly discounted the opinion evidence from Plaintiff's treating physicians and the SSA psychologist. (*See* Dkt. Entry No. 9.)

The regulations require the Commissioner to evaluate every medical opinion it receives, regardless of its source. 20 C.F.R. § 404.1527(d). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Generally, more weight is given to an opinion of a treating physician than to those given by other medical professionals, such as examining physicians and medical experts. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). The Fifth Circuit has consistently held that "[o]rdinarily, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Id.* (quoting *Greenspan*, 38 F.3d at 237). At the same time, an ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455 (citation omitted).

Under the regulations, if a treating physician's opinion as to the nature and severity of a claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not otherwise inconsistent with other substantial evidence in the record, the treating source's opinion should be given controlling weight. 20 C.F.R. § 404.1527(d)(2).

Medical opinions are not conclusive, however, because the ALJ has the ultimate responsibility of determining disability status. *Myers*, 238 F.3d at 621. Thus, when good cause is

shown, less weight, little weight, or even no weight may be given to a treating physician's opinion. *Id.* "Good cause" may exist if the treating physician's opinion or statement is brief and conclusory, not supported by medically acceptable clinical and laboratory diagnostic techniques, or otherwise unsupported by the evidence.  *Id.*  Under Fifth Circuit precedent, if the ALJ finds that:

> treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Newton*, 209 F.3d at 456 (emphasis in the original) (quoting SSR 96-2p). "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Id.* at 453. Those factors include:  (1) the physician's length of treatment of the claimant;  (2) the physician's frequency of examination;  (3) the nature and extent of the treatment relationship;  (4) the support of the physician's opinion afforded by the medical evidence of record;  (5) the consistency of the opinion with the record as a whole;  (6) the specialization of the treating physician; and, (7) any other considerations. 20 C.F.R. § 404.1527(c).

"The ALJ cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000).  However, the absence of an express statement in the ALJ's written opinion about the weight accorded to a particular opinion does not necessarily amount to reversible error. *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that bare conclusions are

sometimes beyond meaningful judicial review but also acknowledging that an ALJ is not required to do an exhaustive point-by-point discussion of the evidence); *Loza*, 219 F.3d at 395 (concluding that "[n]o good cause appears in the ALJ opinion or *in the record* to justify the ALJ's failure to give 'considerable weight' to the treating doctors' medical evidence") (emphasis added).

### 1.   Dr. Garcia, the Treating Rheumatologist

In a letter dated September 13, 2012, Dr. Garcia, a Board Certified Rheumatologist, explains that Plaintiff suffers from multiple health conditions including SLE, rheumatoid arthritis, and joint pain. (Dkt. Entry No. 7 at 5; R. 330.)  Dr. Garcia "opined that, due to her condition, Ms. Guerra is unable to perform day to day activities, making her dependent on family for simple tasks." (Dkt. Entry No. 7 at 5;  R. 50.)

The ALJ gave "little weight" to Dr. Garcia's opinion on the basis that treating physician opinions on issues reserved for the Commissioner, such as the claimant's ultimate disability, are not entitled to controlling weight or special significance. (R. 50.) The regulations explain that opinions on some issues are not medical opinions, "but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d).  Such opinions include a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1).  Also, the final determination of such issues as the RFC are reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2).

The undersigned agrees with Plaintiff that the ALJ's reasoning for discounting Dr. Garcia's letter is not entirely clear. (*See, e.g.,* Dkt Entry No. 7 at 11.)  To accept the ALJ's reasoning, one would have to conclude that the doctor's opinion that Plaintiff "is unable to perform day to day

activities, making her dependent on family for simple tasks" is the equivalent to a statement that Plaintiff is "unable to work" or "disabled," that the opinion amounts to a RFC determination, or, perhaps, that the opinion would direct the determination or decision of disability. Although the ALJ did not explain exactly why he believed that Dr. Garcia's opinion rose to the level of or constituted an issue reserved for the Commissioner, the undersigned finds that the record is clear enough, for the purposes of judicial review, to understand the ALJ's reasoning and conclusion. *Cf. Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that bare conclusions are sometimes beyond meaningful judicial review). In other words, just because Dr. Garcia's opinion did not use the magic words found in the statute, such as "disabled" or "unable to work," the ALJ's conclusion in this case sufficiently conveys his reasoning: if Plaintiff is unable to perform day to day activities and is dependent on others for simple tasks, it would effectively direct a determination of disability. However, as explained shortly, even if the ALJ did err, the undersigned finds it was harmless,.

Plaintiff argues that the ALJ erred in part because he did not evaluate Dr. Garcia's opinion letter under the factors enumerated in 20 C.F.R. § 404.1527(c) (the length of the treatment relationship; frequency of examination; the nature and extent of the treatment relationship; the supportability of the opinion afforded by the medical evidence; the consistency of the opinion with the record as a whole; the specialization of the provider; and, any other considerations). Contrary to Plaintiff's argument, the undersigned observes that the ALJ did touch on some of the factors in his decision. The ALJ noted that Dr. Garcia's letter said that Plaintiff had been his patient for 3 months (when he tendered the opinion), and the length of the treatment relationship is one of the factors. (R. 50.) The ALJ recognized that Dr. Garcia is a treating physician, which can be viewed as a valid consideration under the catch-all factor ("other considerations"). (R. 50.)

9

More importantly, however, the undersigned concludes that the ALJ did not err by failing to more formally analyze the letter under the factors because there was competing first-hand medical evidence from other examining and treating medical sources, including Dr. Pean, who opined that Plaintiff has at least *some* physical abilities (*e.g.*, an ability to lift 20 pounds occasionally (R. 555) and an ability to stand for 30 minutes at a time (R. 553), Dr. Diaz, a psychologist, who found that Plaintiff is not a credible informant, and a treatment record from Dr. Emilia Dulgheru, M.D., one of Plaintiff's treating physicians, who documented that the labs results were negative for systemic lupus, that the claimant's symptoms were suggestive of seronegative rheumatoid arthritis, and that Plaintiff had only minimal synovitis (inflammation of a joint lining) of the wrist and MCP, which was probably related to the discontinuation of prednisone. (R. 54). The ALJ also found that some of Plaintiff's impairments improve with medications. In light of this first-hand medical evidence, the ALJ was not compelled to evaluate Dr. Garcia's opinion under the factors. *See, e.g., Undheim v. Barnhart*, 214 F. App'x 448, 450 & n.5, 2007 WL 178062, at *1 (5th Cir. 2007) (unpublished) (explaining that the "ALJ was not required to go through all six factors in 20 C.F.R. § 404.1527(d) in the face of competing first-hand medical evidence") (citing *Newton*, 209 F.3d at 458, in support, as well as citing *Walker v. Barnhart*, 158 F. App'x 534 (5th Cir. 2005) (unpublished), as an example where the Fifth Circuit has interpreted "*Newton* as not requiring the six-step analysis in the face of competing first-hand medical evidence").

In any event, the undersigned finds that the ALJ's decision to discredit Dr. Garcia's opinion on the basis that it was "an issue reserved to the Commissioner" amounts to harmless error, and the ALJ's alleged failure to provide a detailed analysis of Dr. Garcia's opinion under the § 404.1527 factors was harmless as well, even assuming *arguendo* that the ALJ was required to evaluate this

opinion under each factor. *See, e.g., Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."); *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error."). The undersigned observes that, despite its status as an opinion from a treating physician, Dr. Garcia's opinion is conclusory in nature, which provides a solid "good cause" basis for rejecting it or giving it less weight. *See Myers*, 238 F.3d at 621 (explaining that "good cause" may exist if the treating physician's opinion or statement is brief and conclusory, not supported by medically acceptable clinical and laboratory diagnostic techniques, or otherwise unsupported by the evidence"). Indeed, Plaintiff *concedes* that Dr. Garcia's letter is "conclusory." (Dkt. Entry No. 7 at 11; No. 10 at 3.)

In addition, the record reflects that the opinion is "otherwise unsupported by the evidence" because it is wholly inconsistent with, if not contradicted by, Plaintiff's own description of her daily activities, which provides another "good cause" basis for giving Dr. Garcia's opinion little or no weight.[2] In the written decision, the ALJ described paperwork Plaintiff completed as part of the application process, in which she wrote that she prepared meals for herself, performed light household chores, retained the ability to drive and shop in stores for groceries and personal needs, was able to pay bills, count change, handle a savings account, use a checkbook/money orders, and

---

[2] The ALJ remarked multiple times in the written decision that Plaintiff's description of her daily activities is not consistent with her alleged limitations and the medical evidence. Although the ALJ did not mention Plaintiff's activities in direct relation to Dr. Garcia's letter (*see* R. 50), it is clear enough from the written decision that the ALJ found Plaintiff's daily activities to be quite probative and relevant to his decision-making. (*See* R. 51; 54.) The ALJ wrote that the "claimant's actual activities strongly indicate that [s]he is able to function to a far greater degree than she has alleged." (R. 50.)

was able to engage in her hobbies and interests, such as reading and going to church.[3]  (R. 50;

204–211.)  She stated that she goes to church and to the stores on a regular basis.  (*Id.*)

The undersigned sees no plausible basis for remanding this case when Plaintiff's own

statements about her ability to drive, shop, and engage in some daily household activities are so

notably inconsistent with Dr. Garcia's opinion that "Ms. Guerra is unable to perform day to day

activities" and, relatedly, when Dr. Garcia's opinion is entitled to little or no weight under most, if

not every, "good cause" basis available.  Both circumstances exemplify why any error was harmless,

as there is little to no indication the outcome would any different.  *See Frank v. Barnhart*, 326 F.3d

618, 622 (5th Cir. 2003) (finding harmless error because it was inconceivable that the ALJ would

have reached a different conclusion on the particular record, absent the error); *Brock v. Chater*, 84

F.3d 726, 729 (5th Cir. 1996 ) ("We will not reverse the decision of an ALJ for lack of substantial

evidence where the claimant makes no showing that he was prejudiced in any way by the

deficiencies he alleges.").  Moreover, the mere act of weighing Dr. Garcia's opinion under the factors

enumerated in 20 C.F.R. § 404.1527(c), whether initially or for the purposes of a remand, becomes

far less meaningful or valuable (perhaps pointless) to the decision-making process given the disparity

between Plaintiff's own statements in the paperwork she completed, which the ALJ mentioned

expressly when he made his adverse credibility/symptomology findings, and Dr. Garcia's opinion.[4]

---

[3]  By the time of the hearing, Plaintiff testified, among other things, that she had to spend
anywhere from 3 to 4 hours, if not longer, lying down due to her symptoms, that she is unable to get
out of bed or into the shower without assistance from her daughter, that her pain medications do not
relieve her pain, that she has daily panic attacks due to anxiety, which, in turn, requires her to take
Lorazepam (a benzodiazepine) multiple times a day, and that she now has uncontrolled, severe back
pain.

[4]  Plaintiff cites no authority for the proposition that an ALJ is required to credit or spend
copious amounts of time analyzing a physician opinion simply for the sake of procedural form when

*Cf. Brock*, 84 F.3d at 729 ("We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges."); *Ripley v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995) ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."). This also exemplifies the absence of harm or prejudice. In sum, there is almost no likelihood of a different outcome as far as the handling of the opinion evidence from Dr. Garcia and no indication that the ALJ's handling of this evidence casts into doubt the substantiality of the evidence, so a remand is not appropriate. *See Frank*, 326 F.3d at 622 (finding harmless error because it was inconceivable that the ALJ would have reached a different conclusion on the particular record, absent the error); *Morris*, 864 F.2d at 335 ("[P]rocedural improprieties ... will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision.").

### 2.    The Opinions of Dr. Pean, a Treating Physician

The undersigned finds that the ALJ did not reversibly err in his treatment of the three medical opinions from Dr. Pean, who, as described appropriately enough by Plaintiff, is a board-certified internal medicine specialist who has treated Plaintiff for SLE, severe arthralgias, severe depression, and anxiety. (Dkt. Entry No. 7 at 5.) As Plaintiff correctly explains, "the ALJ assigned them all 'little weight' because they are 'not supported by clinical findings or the record as a whole.'" (*Id.*

---

the physician opinion is inconsistent with the claimant's own statements or testimony, nor has the undersigned found any. *Cf. Spellman v. Shalala*, 1 F.3d 357, 364–65 (5th Cir. 1993) (holding that it was proper to reject a treating physician's opinion that the claimant could not perform sedentary work, in part, because the opinion was inconsistent with evidence of the claimant's everyday activities).

at 10.) (citing R. 52–53.)  "The ALJ also stated that he was unable to give Dr. Pean's opinions controlling weight, as they 'appear to be merely subjective complaints with no clinical data support.'" (*Id.*) (citing R. 53.).

The opinion evidence is as follows:

(a)      On February 15, 2013, Dr. Pean completed a form entitled "Medical Opinion Re: Ability to Do Physical Activities." (R. 394–96.)  Dr. Pean opined that Plaintiff can lift/carry up to 10 pounds, sit 4 hours, and stand/walk 2 hours total during an 8-hour workday.  (*Id.*)  He stated that Plaintiff needs a job that permits shifting positions at will from sitting, standing or walking and that she will need to take three to four unscheduled breaks of 30 to 40 minutes' duration throughout the workday. (*Id.*)  He opined that Plaintiff can never climb stairs or ladders and that she can occasionally twist, stoop, and crouch.  (*Id.*)  He opined that Plaintiff should avoid exposure to extreme cold, fumes, odors, dusts, gases, soldering fluxes, solvents/cleaners, and chemicals.  (*Id.*)  He opined that Plaintiff would likely have good and bad days and would be absent from work more than 2 days per month. (*Id.*)

(b)      On August 10, 2013, Dr. Pean completed a form about Plaintiff's abilities and limitations. In it, he explained that Plaintiff has a guarded prognosis for improvement, and he summarized clinical findings of limited range of motion, positive antinuclear antibody (ANA) test, and joint tenderness and warmth involving her upper and lower extremities.  (Dkt. Entry No. 7 at 6.) (citing R. 551–555.)  Dr. Pean opined that Plaintiff can walk a half block, sit 45 minutes, and stand 30 minutes at a time.  (*Id.*)  He opined that Plaintiff can use her arms, fingers and hands for grasping, reaching, and fine manipulation 20% of the time.  (*Id.*)  In addition, her symptoms are often severe

enough to interfere with attention and concentration and she is incapable of even low stress jobs.

(*Id.*) Dr. Pean also noted that she is on 20 medications. (*Id.*)

(c)     On August 19, 2013, Dr. Pean completed a mental assessment. Dr. Pean opined that Plaintiff

has a "poor to no ability" to perform the following work-related tasks:

- Maintain attention for 2 hour segments
- Work in coordination with or proximity to others without being unduly distracted
- Complete a normal workday and workweek without interruptions from psychologically based symptoms
- Perform at a consistent pace without an unreasonable number and length of rest periods
- Deal with normal work stress
- Understand, remember and carry out detailed instructions
- Set realistic goals or make plans independently of others
- Deal with stress of semiskilled and skilled work.

(Dkt. Entry No. 7 at 6–7.) (citing R. 567–68.) Dr. Pean noted that Ms. Guerra's PHQ-9 scores had

ranged from 21 to 23.[5] (Dkt. Entry No. 7 at 7.) He concluded that she is likely to be absent more

than twice a month due to her mental impairments. (*Id.*)

Plaintiff argues that the "ALJ offered no explanation for his conclusion that Dr. Pean's

opinions are not supported by clinical findings," even though "examination findings . . . have

consistently shown joint swelling, tenderness and synovitis as well as muscle weakness and very

poor bilateral grip strength." (*Id.* at 10.) Plaintiff asserts that "laboratory results have revealed a

positive ANA, which is consistent with Ms. Guerra's diagnoses of systemic lupus erythematosus

(SLE) and rheumatoid arthritis." (*Id.*) Moreover, Plaintiff asserts, Dr. Pean's opinions are consistent

with that of Dr. Garcia, the treating rheumatologist. (*Id.* at 10–11.)

The undersigned concludes that the ALJ did not err under *Newton* by failing to analyze the

Dr. Pean's opinions under the § 404.1527(c) factors. First, there is sufficient indication that the ALJ

---

[5]   "PHQ" stands for "Patient Health Questionnaire" and is a tool for evaluating depression.

took into consideration many of the enumerated factors when he discussed the opinion evidence from Dr. Pean.[6] The ALJ recognized that Dr. Pean is a treating source (R. 52), and the ALJ evaluated "the supportability of the opinion afforded by the medical evidence" and "the consistency of the opinion with the record as a whole" because the ALJ found that Dr. Pean's opinions were not supported by the clinical findings or the record as a whole, explaining also that Dr. Pean's opinions appear to be based on Plaintiff's subjective complaints, with no clinical data in support. (R. 52–53.)

Second, there is competing first-hand medical evidence from examining physicians that obviated the ALJ's duty to do a more formalized assessment of the factors pursuant to *Newton*. *See, e.g.*, *Undheim*, 214 F. App'x at 450 & n.5, 2007 WL 178062, at *1 (unpublished) (explaining that the "ALJ was not required to go through all six factors in 20 C.F.R. § 404.1527(d) in the face of competing first-hand medical evidence") (citing *Newton*, 209 F.3d at 458, in support, as well as citing *Walker*, 158 F. App'x at 534, as an example where the Fifth Circuit has interpreted "*Newton* as not requiring the six-step analysis in the face of competing first-hand medical evidence"). The competing, first-hand medical evidence is as follows:

---

[6] Plaintiff argues in her reply brief that Defendant acknowledges that the regulations require an ALJ to "'apply' the factors and articulate good reasons for the weight assigned to a treating source opinion," and Defendant "admits that the ALJ only "acknowledged and/or discussed some of the [§ 404.1527] factors in evaluating the opinions of Dr. Pean." (Dkt. Entry No. 10 at 1.) According to Plaintiff, because Defendant has conceded these points, "there does not appear to be any dispute over the foundation of Plaintiff's argument." (*Id.* at 2.) The problem with this argument is that Plaintiff conflates two different concepts: an ALJ's duty, when triggered, to review opinion evidence under the § 404.1527 factors (per *Newton*) and an ALJ's duty to explain the weight he gives to a medical opinion. The ALJ in this case *did* explain the weight he gave to the medical opinion evidence. It is a separate question, on judicial review, whether an ALJ analyzed, or was required to analyze, the evidence under the *Newton* factors. Although these issues may overlap at times, a failure to analyze an opinion under the *Newton* factors does not necessarily mean that an ALJ also failed to articulate the weight he gave to a medical opinion or "good reasons" for it.

(1)  A treatment report by Dr. Garcia in August 2012, which shows that a review of Plaintiff's "systems" was negative, except for positive arthralgias and joint stiffness.  (R. 50; 296.)

(2) A treatment note, dated May 2013, by Dr. Emilia Dulgheru, M.D., one of Plaintiff's treating physicians, which reflects that labs results were negative for systemic lupus, that the claimant's symptoms were suggestive of seronegative rheumatoid arthritis, and that Plaintiff had only minimal synovitis (inflammation of a joint lining) of the wrist and MCP, which was probably related to the discontinuation of prednisone.   (R. 54.)

(3)    When Plaintiff was hospitalized in April 2013 for chest pain, a "review of systems," which included an examination that covered her musculoskeletal and psychiatric systems, showed normal results.  (R. 51.)

(4)    Plaintiff underwent physical therapy for a month or less beginning in May 2013.  (R. 52; 440–464.) Her examination revealed she had moderate difficulties.[7] (R. 52.) Plaintiff reported that she improved with Prednisone. (*Id.*)

(5)    Record evidence reflects that medication improved Plaintiff's symptoms.  (R. 55; 72–73; 79; 296; 367; 440.) *See Lovelace v. Bowen*, 813 F.2d 55 (5th Cir. 1987) ("A medical condition that can reasonably be remedied by surgery, treatment, or medication is not disabling.").

(6)    A consultative examination report, dated December 2012, by Dr. Pietra Diaz, a psychologist, who deemed Plaintiff to be an unreliable informant due to inconsistent statements made to the clinician. (R. 50–51; 366–371.)  At the same time, Plaintiff told Dr. Diaz that she has never been treated by a mental health professional on an in-patient or out-patient basis, despite the debilitating

---

[7]   The initial evaluation also includes the PT's impression that "overall rehabilitation potential is excellent."  (R. 442.) Subsequent progress notes reflect that Plaintiff did not attend all of her sessions and ultimately requested to terminate the PT treatment.  (R. 449;  464.)

nature of her mental health symptoms and the limitations identified by Dr. Pean. (R. 51, 367.) (Dr. Diaz also opined that Plaintiff's prognosis was very good, if she were to submit to ongoing treatment.)

(7) The inconsistent or mixed results of the mental health evaluations done by Dr. Diaz in December 2012 and Dr. Eliza Garza Sanchez in May 2013. For example Dr. Diaz found that Plaintiff had a poor memory, among other things, and assigned her a GAF of 45 (R. 50–51), while Dr. Sanchez, M.D., found Plaintiff had a good memory, among other things, and assigned a GAF of 60, which the ALJ noted was indicative of moderate symptoms and moderate difficulties in functioning (R. 52; 559–564).

(8) The absence of diagnostic testing or examination results in the medical records as a whole that would support or be more meaningfully consistent with (*i.e.*, something beyond "possibly suggestive of") the *degree* of impairment and limitations imposed by Dr. Pean. (*See id.*; *see also* R. 469–482.)

Moreover, the ALJ had ample "good cause" to give little weight to Dr. Pean's opinions, which is evident form the ALJ's opinion. *See Loza*, 219 F.3d at 395 (indicating that the good-cause basis should be evident from the ALJ's opinion or the record). The ALJ stated that Dr. Pean's opinions were not supported by clinical findings or the record as a whole, which are permissible "good cause" bases for discounting medical opinions. (R. 52–53.) *See Myers*, 238 F.3d at 621 (explaining that "good cause" may exist if the treating physician's opinion or statement is brief and conclusory, not supported by medically acceptable clinical and laboratory diagnostic techniques, or otherwise unsupported by the evidence).

In addition to the evidence listed above, the ALJ's treatment of and findings about Dr. Pean's opinion evidence is substantially supported by other evidence. This evidence includes the ALJ's

18

adverse credibility/symptomology findings and the activities Plaintiff explained she could do in her application paperwork (*e.g.,* driving, shopping, and some household chores/activities), which showed she could do more than she was alleging. *See Leggett,* 67 F.3d at 566 (pointing to the claimant's own testimony as one of the reasons that supported a finding of "good cause"). Further, there is an absence of any specific information or treatment data in or attached to Dr. Pean's assessments to explain or support the physical and mental capabilities and limitations Dr. Pean imposed; instead, Dr. Pean's assessments rely primarily on the diagnoses themselves.[8] In that respect, the ALJ noted that Dr. Pean's opinions appeared to be based on Plaintiff's subjective complaints, with no clinical data in support. (R. 53.) A review of Plaintiff's hearing testimony shows that the bulk of Plaintiff's alleged limitations are predicated on pain. However, there is an absence of supporting evidence in the record to support the degree of the pain alleged. (*See* 393–396; 551–556; 566–68.) The ALJ noted there was an absence of evidence showing that Plaintiff's rheumatoid arthritis had interfered with her ambulation or fine motor skill, which is a reasonable conclusion based on the evidence, and the ALJ concluded that Plaintiff's subjective complaints were not consistent with the record. (R. 55; 293–301.) The ALJ also explained that he had given "due consideration" to proper evidentiary issues such as the extent of medical treatment, relief from treatment and medication, and attempts to seek relief from symptoms. (R. 54.) Lastly, the evidence includes the assessments by the non-examining Agency physicians, in which they evaluate Plaintiff's physical and mental limitations and

---

[8] As correctly pointed out by Defendant, "[i]f Plaintiff was aware of any additional evidence from Dr. Pean, he should have provided that evidence to the ALJ to fulfill his responsibility of furnishing or identifying evidence regarding his condition." (Dkt. Entry No. 9 at 8–9.) *See* 20 C.F.R. §§ 404.1512(a); *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); *Leggett,* 67 F.3d at 566 (explaining that it remains the claimant's burden to prove her disability).

abilities, and the ALJ properly relied on these, after evaluating all the evidence and finding the assessments to be consistent with the evidence. (R. 54; 322–329; 373; 375–392.) These Agency assessments also included written explanations in support of the internal conclusions.

Although Plaintiff argues that the record evidence, including the diagnoses themselves, *are* consistent with Dr. Pean's opinions, the ALJ was charged with making that determination, *see Brown*, 192 F.3d at 496 (stating that evidentiary conflicts are for the Commissioner, not the courts, to resolve), and there is substantial evidence to support the ALJ's finding that Dr. Pean's opinions were not consistent with or otherwise lacked support in the record evidence as a whole.

Lastly, assuming *arguendo* that the ALJ failed to conduct a detailed analysis of Dr. Pean's opinion evidence under the enumerated factors, it was harmless. Plaintiff does not allege that any of the physician opinions were entitled to controlling weight. Moreover, the mere fact that Plaintiff has been diagnosed with certain conditions and has a history of some associated symptoms, which Plaintiff relies on in large part in arguing for a remand, are not enough to persuade the undersigned that the error was harmful or prejudicial, when there is adequate record evidence, including competing first-hand medical evidence, Plaintiff's own statements about her daily activities, and evidence showing that some of Plaintiff's impairments/symptoms are treatable, to support the conclusion that Plaintiff is not as limited as she alleges or Dr. Pean states she is. Moreover, the record shows that Plaintiff tendered to the Appeals Council a letter, which the Appeals Council entered into the record, from Dr. Pean, dated January 24, 2013, in which he explains that Plaintiff "is taking multiple medications that interfere with the possibility of employment," and, as a result, "the patient is disabled." (R. 582.) This letter was written *before* Dr. Pean submitted his physical and mental assessments. If Dr. Pean is of the opinion that Plaintiff is disabled (an opinion the ALJ

is not required to defer to or give any special consideration to), then there is little harm or prejudice connected to the ALJ's treatment of the mental and physical capability assessments Dr. Pean completed, to the extent the assessments amount to or are the equivalent of opinions stating Plaintiff is disabled.  At the same time, none of the assessments he completed after that letter appear to rule out the possibility of work entirely, insofar as the assessments he completed speak about the types of things Plaintiff is able to do in a job.  In that sense, Dr. Pean's opinion evidence is equivocal or inconsistent because the letter states that, due to her medications, Plaintiff is disabled, but the assessments suggest that Plaintiff retains some abilities and do not state that she is disabled due to her medication regime.  In a nutshell, the letter tendered to the Appeals Council undermines any suggestion that Dr. Pean's opinions would garner more weight (or be deemed more "consistent") if this case were remanded or that Plaintiff was harmed by the ALJ's alleged error(s). *See, e.g, Frank*, 326 F.3d at 622 (finding harmless error because it was inconceivable that the ALJ would have reached a different conclusion on the particular record, absent the error); *Brock*, 84 F.3d at 729 ("We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges."); *Ripley*, 67 F.3d at 557 n.22 ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.").

### 3.    Dr. Diaz: The Consultative Psychologist

Plaintiff argues that the ALJ did not explain how much weight he gave to this medical source opinion.  Plaintiff implies, but does not cite any authority for the proposition, that the "GAF" score (Global Assessment of Functioning) amounts to medical source opinion.  The undersigned finds that

the ALJ did not err as alleged. The written decision reflects that the ALJ discussed Dr. Diaz's report and findings at length. (R. 51–52.) To that end, the ALJ did not fail to consider this evidence, as Plaintiff contends. Further, the ALJ adequately explained his reasoning about this evidence, noting that Dr. Diaz found Plaintiff to be an unreliable informant and that the mental status examinations in the record showed mixed results. (R. 55.) This is a sufficient, allowable explanation. *Cf. Myers*, 238 F.3d at 621 (explaining that "good cause" may exist if the treating physician's opinion or statement is brief and conclusory, not supported by medically acceptable clinical and laboratory diagnostic techniques, or otherwise unsupported by the evidence); *Undheim v. Barnhart*, 214 F. App'x at 450 & n.5, 2007 WL 178062, at *1 (unpublished) (explaining that the "ALJ was not required to go through all six factors in 20 C.F.R. § 404.1527(d) in the face of competing first-hand medical evidence"). Plaintiff does not argue that Dr. Diaz was the equivalent of a long-time treating physician whose opinion might given controlling weight by virtue of that unique role, nor could she. *See Myers*, 238 F.3d at 621 (explaining that more weight is given to an opinion of a treating physician than to those given by other medical professionals, such as examining physicians and medical experts); 20 C.F.R. § 416.902 ("Nontreating source means a physician, *psychologist*, or other acceptable medical source *who has examined you but does not have, or did not have, an ongoing treatment relationship with you.*") (emphasis added). At most, Plaintiff argues that the ALJ should have given particular findings in the report more weight and attention, and, had the ALJ done so, the ALJ would have concluded that Plaintiff is disabled or reached a different RFC. That is not evidence of reversible legal error, particularly with regard to the *Newton* factors. Instead, it amounts to a disagreement with the ALJ's resolution of the evidence, which is not a basis for a remand in this

case. *See Brown*, 192 F.3d at 496 (stating that evidentiary conflicts are for the Commissioner, not the courts, to resolve).

### 4.    ALJ's Duty to Recontact the Physicians

Plaintiff also asserts that the ALJ was obligated to recontact her treating physicians before discounting their opinions or, at least, to order a consultative examination. (Dkt. Entry No. 7 at 13.) However, as correctly pointed out by Defendant, Plaintiff can only speculate that any additional statements from her treating physicians (Dr. Garcia or Dr. Pean) would help her case.  An ALJ's failure to develop the record is subject to harmless error analysis. *E.g., Ripley*, 67 F.3d at 557.  The existing record undermines Plaintiff's suggestion that anything might have been gained or adduced had the ALJ not purportedly erred. Dr. Pean tendered *three* different functional assessments in 2013, and none of them included internal explanations or supplemental data in support of his opinions and findings. Also, Dr. Pean wrote the letter dated January 24, 2013, in which he states that Plaintiff medications render her "disabled." (R. 582.)  It seems quite unlikely, if not improbable, that a *fifth* attempt would yield more detailed information from this treating physician, but, at a minimum, it is far too speculative to justify a remand. *Cf. Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012) (asserting that "[a] mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden").  Moreover, contrary to Plaintiff's argument, the record was developed enough for the ALJ to adequately dispose of her claim for benefits, as there were many medical records, examination reports, including a psychological consultative examination report by Dr. Diaz, and opinions and functional assessments offered by Plaintiff's treating physicians. *Cf. Jones*, 691 F.3d at 733 ("Because the record contained ample objective and opinion evidence supporting the ALJ's conclusions, however, he was not required to

develop the record further . . . ."); *Ripley*, 67 F.3d at 557 ("The ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing."). Just because the ALJ discounted or gave less weight to the evidence Plaintiff submitted does not mean the ALJ failed to develop the record or did not have enough before him to render an informed decision. *See, e.g., Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (indicating that an ALJ is responsible for weighing the claimant's credibility and the medical evidence); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (reiterating that the "ALJ has sole responsibility for determining a claimant's disability status").

In conclusion, the undersigned finds that the ALJ did not reversibly err as alleged, and this first ground does not present a basis for a remand.

### B.      Error in Formulating the Mental RFC Assessment

Plaintiff argues that the mental RFC does not accurately describe all of Plaintiff's individual impairments and limitations, which amounts to error and requires a remand.  (Dkt. Entry No. 7 at 20.)  Specifically, Plaintiff argues that the ALJ erred when he found that Plaintiff had moderate limitations of social functioning and of concentration, persistence, and pace, but he did not sufficiently incorporate these limitations into his RFC finding. Plaintiff contends that the ALJ's RFC limitation stating that Plaintiff "can" interact appropriately facially states no limitation at all. (*Id.* at 21.)  Similarly, with respect to concentration persistence and pace, the ALJ's finding that Plaintiff "can" attend and concentrate for extended periods does not describe any limitation of concentration persistence or pace. (*Id.*)  Plaintiff argues that it was not harmless error because vocational testimony based on incomplete statements about the practical effects of a claimant's limitations does not amount to substantial evidence. (*Id.* at 22.)  Defendant contends the ALJ reasonably

24

incorporated all of the limitations that he recognized in his RFC assessment and that were supported by the record. (*See* Dkt. Entry Nos. 8–9.)

The undersigned finds that the ALJ did not err in formulating the mental RFC. The ALJ reviewed all the record evidence, including opinion evidence and Plaintiff's statements and testimony in formulating the RFC, which complies with the regulations. *See* 20 C.F.R. § 404.1545 ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). The ALJ concluded that Plaintiff is limited to understanding, remembering, and carrying out simple instructions, limited to a simple routine and repetitive tasks, can concentrate and attend for extended periods of time, interact with co-workers and supervisors, and respond appropriately to changes in a routine work setting. (R. 49.) There is substantial evidence supporting the mental-health component of the RFC, including the Agency mental assessments, the absence of supportive clinical findings and opinion evidence showing that Plaintiff was more limited than she alleged, Dr. Diaz's statement that Plaintiff is an unreliable informant, Plaintiff's statement that she has never had mental health treatment (except for medications), indications that her symptoms improve with medications, the adverse credibility/symptomology findings, and some of the abilities in Dr. Pean's mental health assessment (*e.g.,* he checked a number "good" boxes in the form). Although Plaintiff disagrees with the ALJ's assessment of her mental RFC, the record reflects that the ALJ applied the proper legal standards and complied with his legal duties in formulating the RFC.

The record reflects that the ALJ gave a nearly verbatim reading of the mental health RFC findings to the vocational expert at the hearing, which means that the hypothetical reasonably incorporated the RFC findings identified by the ALJ, and Plaintiff was given the opportunity to

examine the vocational expert, but declined to do so.  In that sense, the hypothetical was not defective.  *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (explaining that this "circuit's test for determining when a defective hypothetical question will produce reversible error becomes clear: reversible error occurs unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions.").[9]

The undersigned finds that Plaintiff's argument that the moderate difficulties in certain areas were not properly accounted for lacks merit.  First, the argument is really about Plaintiff's disagreement with the RFC (not the hypothetical).  *Cf. Vaught v. Astrue*, 271 F. App'x 452, 456, 2008 WL 828942, at *3 (5th Cir. 2008) (unpublished) (noting that the claimant's argument amounted to disagreement with the mental RFC, not the hypothetical).  As Defendant correctly points out, Plaintiff did not, and still does not, present any other evidence that would warrant additional limitations, and Plaintiff does not identify any precise limitations the ALJ allegedly failed to account for in the mental RFC in terms of social functioning and concentration, persistence, and pace.  Both would be hard to do because Plaintiff's mental-health opinion evidence in this case, as reiterated by the ALJ at the hearing, reflected an inability to work even a low stress job (*See* R. 90), and Dr. Pean

---

[9] The *Voyles* case, which Plaintiff relies on, differs from this instant case because it involved a situation where the ALJ identified moderate difficulties in the RFC, but the ALJ *failed* to present them to the vocational expert in the hypothetical. *See Voyles v. Comm'r of Soc. Sec. Admin.*, No. 03:11-cv-0652-B, 2011 WL 825711, at *9 (N.D. Tex. Feb. 16, 2011) ("[T]he ALJ stated in his decision that the Plaintiff has 'moderate limitations in her ability to maintain concentration, persistence, or pace' (Tr. 53) but did not pose these limitations to the VE in his hypothetical question.")

opined that Plaintiff had *poor or no ability* to maintain attention for a 2 hour segment, to perform at a consistent pace, or work in coordination with or proximity to others without being unduly distracted (R. 567). In other words, the evidence Plaintiff presented at the time of the hearing and now reflects limitations far beyond or inconsistent with "moderate difficulties." The ALJ weighed Plaintiff's purported mental limitations and properly rejected them, so the ALJ was not required to incorporate them into the RFC or the hypothetical. Moreover, the wording of the ALJ's mental RFC findings are based on the language used by Dr. Murphy, the Agency physician responsible for the Mental RFC Assessment form. (R. 391.) The ALJ properly gave significant weight to this opinion, in light of the evidence as a whole. (R. 54.) Finally, the record reflects that the vocational expert understood and was able to respond to the mental limitations conveyed to him by the ALJ (despite Plaintiff's allegations of vaguely worded RFC limitations), and counsel for Plaintiff declined to ask any questions of the vocational expert. (R. 90.) *Cf. Bowling*, 36 F.3d at 436 (explaining that the claimant's representative must be given the opportunity to "to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions"); *Vaught*, 271 F. App'x at 456, 2008 WL 828942, at *3 (noting that the claimant was given the opportunity at the hearing to question the vocational expert and could have corrected any errors in the hypotheticals, or added additional disabilities, during the hearing, but did not).

In sum, the undersigned finds that the ALJ did not reversibly err as alleged, and a remand is not warranted on this ground.

## V. CONCLUSION

### *Recommended Disposition*

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 6) be **DENIED**, Defendant's Motion for Summary Judgment (Dkt. Entry No. 8) be **GRANTED**, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. A party may respond to another party's objections within 14 days after being served with a copy thereof. The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

28

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 5th day of February, 2016.

Dorina Ramos
UNITED STATES MAGISTRATE JUDGE